Chief Justice Marshall
delivered the opinion of the Court.
This was an action of replevin brought by Bourne, a Constable, against Hocker, a Deputy Sheriff of Madison county, for three slaves which the plaintiff, as Constable, had taken under several common law attachments against one James, to whom they belonged, but which the defendant as Sheriff, levied on and took out of the plaintiff’s possession under and by virtue of an execution, (fi.fa.,) against the said James, which had come to the hands of the Sheriff and was so endorsed by him before the attachments were levied or came to hand,, but on the same day. The foregoing facts having been presented by an avowery and plea thereto, in which *24 the execution and attachments were exhibited, the defendant demurred to the plea to the avowery taking oyer of the attachments and attachment bonds, and, pending the demurrer moved to quash said attachments on various grounds. This motion was overruled, but no exceptions were taken. And the demurrer having been sustained, a judgment was rendered in favor of the defendant for a return of the slaves, or for their respective values as assessed by a jury called for the purpose.
The main question presented on the revision of this judgment is, whether as the execution and the attachments emanated from different sources, came to the hands of distinct and independent officers, and each authorized and required a seizure of the property of the same defendant, there was any priority between them except such as might be acquired by the first levy. It is conceded and indeed well settled, that had the process in the hands of each officer been an execution, (a Ji. fa.,) the first levy though under the junior, execution would have gained the precedence: (see Million vs. Commonwealth for use of Withers, 1 B. Mon. 311, and authorities there cited.) But it is contended that this principle does not apply to a contest between an execution and an attachment: 1st, because the execution gives a lien from the moment of its reception by the officer, while an attachment gives no lien until there is an actual seizure; and 2d, because the levy of an ex- , ecution divests the right of the defendant, and vests a property in the officers to a greater extent than the levy of an attachment.
We do not admit the correctness of this latter distinction. We suppose that a lawful levy under an attachment vests the property in the officer in the same degree, and during its continuance affects the right of the owner in the same manner, and to the same extent as a levy under an execution ; the property in both cases being in possession of the officer for the, purposes of the writ, and subject to final appropriation in satisfaction of the debt. But we apprehend the question *25 in this case depends more especially upon the question whether the 'levy of the attachment was lawful while there was an unlevied execution in the hands of another officer. For if the Constable had a right to levy the process in his hands, we do not perceive how the Sheriff could rightfully invade-the possession thus lawfully acquired, or take from him the property which he had rightfully taken for the purposes of the writ in his hands, and which by his seizure was placed properly in the •custody of the law. It is to prevent such an invasion <of possession lawfully acquired under legal process, to remove all ground for such a struggle between independent officers of the law, and to avoid occasion for •conflict between different authorities or tribunals competent to act upon the same party and the same property, that the law has established the principle that the first execution of ¡the process In the hands of distinct officers and emanating from distinct and competent authorities, shall give the precedence.
Where an attach ment is in the hands of one officer, ,(a constable) and a fi. fa. in the hands of the sheriff vs the same individual, that pro • cess first levied will hold the .property. The lien given by the ■execution will not overreach that acquired by the_ attachment which has been first levied. So of executions in the hands of distinct officers.
The fact that in the case <of executions in distinct hands, the priority of date is held to be of no force against the priority of actual execution, shows that the principle above referred to an'd the objects to be secured by it, aredeemedof moreconsequence than the preservation or observance of the lien existing by delivery of the writ, but which standing by itself is scarcely more than nominal, and fades into nothing unless followed by an actual legal levy. An attachment is as imperative in requiring and as efficacious in authorizing a seizure of the defendant’s goods as a fieri facias. And if the lienwhatever it be, of the senior execution, leaves while it is unlevied such property or right in the defendent, that a junior execution in distinct hands may not only be levied on it, but may by the first levy appropriate the property to itself to the exclusion of the senior execution, we do not perceive on what ground the «unlevied execution or any lien attaching to it can repel an attachment which is a process of equal authority with itself. True, the attachment gives no lien before it -is *26 levied. But this is substantially true with respect to the junior execution as against the older one in the hands of the officer. And it is also substantially true with respect to the older one itself, as against a junior execution in the hands of a distinct officer acting under a distinct authority. For to say that as between them the first levy gains the precedence, is to say that as between them there is no lien until there is a levy. It seems impossible to trace this want or annihilation of the lien of each as against the other, to the fact that each would have a lien but for the other, or that each has a lien except as against the other. If the lien arising from the right to levy were to be regarded, the execution first in hand must prevail.' The true ground and principle of the rule applicable to the case seems to be, that the process in the hands of each officer being equally authoritative and equally imperative in its requisition to seize the property of the defendant, and each officer being independent of the other, each has a right and is bound to execute the process in his hands as speedily and as effectually as he can, and that the right and authority of each being equal, either may rightfully act without yielding to the mere authority of the other to act; but that when either has acted under the mandate of his process and has by seizure acquired the possession and placed the property in the custody or under the authority of the law, the other is bound to respect this possession and custody. And he cannot afterwards take the property, because it is no longer in the possession or power of the defendant, but has already been taken by competent authority and is under the power and protection of the law, and because his subsequent seizure of it while in the lawful possession of the first taker would be a trespass which he is not authorized to commit. A possession derived from the act of the defendant is of course not thus protected.
In view of these principles, we cannot distinguish between an attachment and a junior execution with respect to the effect of the first levy by a distinct officer acting under distinct and competent authority, while a *27 prior unlevied execution is in the hands of another officer. We are therefore of the opinion that the levy of the attachments in this case vested such a possession and property in the Constable, as the Sheriff had no right to violate or divest by levying the elder process of execution in his hands, and that consequently the seizure of the slaves by the Sheriff while they were in possession of the Constable under his levy, was an unlawful taking, remediable by action of replevin, and the plea is a sufficient answer to the avowry and to the prayer for a return of the slaves, unless the attachments as exhibited in the plea should be deemed void. For although the Sheriff had no right in this contest between him and the Constable to move that the attachments, to which neither of them was a party, should be quashed, we suppose that as, if actually void they conferred no authority and no right, so if upon the face of the plea they are void, they furnish no answer to the avowry and no support to the action. The question of their being void may therefore properly arise on the demurrer, and we have examined the several attachments and bonds with a view to that question.
The statute requiring bonds to oe given before suing out attach ment, does not require that the sum for which the attachment is to issue sho’d be stated, but only that it be in a penalty double the am’t. of the debt. It it be greater it is no objection lo the bond or attachment.
An attachment is not void because it unites demands under fifty dollars with others over fifty dollars. When it states that a debt is due by note, the presumption is that the note is payable to the plaintiff. When it is stated to be due by account, it is not necessary to set out items. It is not void by being made returnable to the Clerk of the Circuit Court instead of the Circuit Court. Bor is an attachment rendered void, or a levy under it by the failure of the officer to return it within three months.
*27 One of the objections made, is that the proper bond was not given in each case, the only specification being that in one case the bond is in the penalty of $1000, and recites that the obligor is about to sue out an attachment for $500, when in fact the attachment is not for more than $250. The statute h owever, does not require the sum for which the attachment issues, to be stated in the bond, but only that the penalty shall be in double the amount of the debt and interest sought to be attached. The sum of the objection is that the penalty is greater than the law requires, of which the obligee certainly has no right to complain, and we think it does not make the bond void.
With regard to other objections we observe, 1st. That an attachment is not void because it unites demands under $50 with others over that -sum. Such attachments are returnable to the Circuit Court, where the question as to the effect of such union is to be dis *28 posed of. And we suppose the worst result for the plaintiff that could then take place would be the quashal or disregarding of so much of the attachment as goes for the minor demands. We are not however to be understood as intimating, that if some of the demands exceed $50, others for a less sum may not be united with them, all constituting the debt for which the attachment issues.
2nd. When an attachment is for a certain sum stated to be due by note, it is to be understood that the note is payable to the plaintiff and is due when he applies for the attachment. The failure to be more specific does not make the writ void. It is of course unnecessary to state that the note was not assigned to the plaintiff.
3d. In stating a debt to the plaintiff due by account it is not necessary to the validity of the process that the items or the subject matter of the account should be set forth in the attachment. The form of warrants from a justice for debts under $50, due by account or by note, has always been deemed sufficient. A bill of particulars, or without that the evidence explains and identifies the demand.
4th. The direction in one of the attachments that it be returned to the Clerk of the Circuit Court instead-of to the Circuit Court itself, is at most but a formal error, and cannot vitiate the process. The return is in fact to be-made to the office of the Clerk, who brings it into Court; and a return to him is substantially a return to the Court.
5th. The objection that more than three months had (at the filing of the plea,) expired from the date of the attachments, and they had never been returned to any Court or Justice, if true in point of fact is deemed unavailable on the demurrer, as we know of no principle which nullifies the attachment or the proceedings under it on the ground assumed. The attachments were in full force when the constable levied them on the very day -of their date, and when the Sheriff on that and the succeeding day took the slaves out of his possession *29 and when in the same month this action- wás brought; and they were in the proper Court with proper returns of the levy, when the plea was filed three months and five days after their date. What had been done with them in the interval does not appear. If there be a requisition of law that they should be returned in three months, it has not been pointed out or referred to, and we are ignorant of it. But be this as it may,, the attachments were certainly not abandoned. And if they were not returned in time, the failure was no doubt attributable to the wrongful act of the Sheriff in .taking the slaves under the execution, and thus putting it out of the power of the Constable to dispose of them as directed by law, and in fact making the whole efficacy of the attachments depend upon the result of the question of right properly made in this action of replevin.
Although a constable-levying an« atlach'nt where* the sum due’is. over fifty dollars; is required to de-liver the attached effects to the* Sheriff; yet if the-Sheriff seize the property so attached, & claim* the right to levy and sell under.; jl. fa.t the constable may mainu tain replevin.
We are of opinion that the attachments are not void on any of the grounds taken against them, and we perceive no others on which they should be deemed void.' And we only add that although it is made the duty of the Constable levying a common law attachment for a debt over $50, to deliver the attached effects to the Sheriff (3rd Stat. Law 46-49,) so that the Sheriff was entitled to the possession; yet as he was entitled to it under the attachments and for the purposes of those writs, and not under the execution, his possession by seizure under the execution was wrongful, and his claim in right of the execution is no more sustainable than if the Constable Were authorized to retain the possession ’ until the slaves should be finally disposed of by an order discharging the attachments or directing a sale in satisfaction of the debts therein demanded. The real-question is whether the slaves are to be held under the-attachments or under the execution. And that question is more properly triable in this action than upon the attachments themselves, which in fact are not properly triable at all without appearance by the defendant, unless the levy by the Constable is effectual. When the question in this action is determined, the slaves can be delivered to the Sheriff in the proper character," full re *30 turns can be made on the attachments and they may be tried or dismissed.
Caperlon for plaintiff; Turner for defendant.
Wherefore the judgment is reversed and the cause remanded, with directions to overrule the demurrer to the plaintiff’s plea and for further proceedings.